Good morning, Your Honors. May it please the Court, Elisabelle, on behalf of Petitioner Appellant Mark Lane, and with the Court's permission, I'd like to reserve two minutes for rebuttal. Please watch the clock. Yes, thank you, Your Honor. I'm going to endeavor not to be redundant as much as possible, but I do understand many of the same issues are presented, so I would invite the Court, please, to focus my argument wherever you feel you concern. First and foremost, in this case, the government has principally argued that the threat of bodily harm is what brings Section 203 within constitutional bounds. And in this case, the record at least contains some support for the fact that Mr. Lane was sanctioned, and this is in the 17-55582 case, was sanctioned under that latter clause for threats of any other offense. At Excerpts of Record 69, he was charged with threatening staff use of mail for illegal purposes, and in Excerpt of Record 116, he was sanctioned because he implied a threat towards a government official. The government, in their briefing below, explained that the threat at issue in that case, which, to remind the Court, he sent a letter to a law enforcement. No matter what, my family has your name, address, and phone number. The government below said that could be a threat of stalking. I've argued in my brief it certainly could be a threat of vandalism. So it certainly makes sense that the BOP did not treat that necessarily as a threat of bodily harm. And to the extent that they did so treat it, it does underscore the breadth of this regulation, that it does reach threats of any other offense. More fundamentally, however, the real question here is whether the Bureau of Prisons can be delegated the authority to use this regulation reasonably, as your Honor put it. Whether it's up to the BOP to decide whether they are going to use only half of the regulation as it's written, and whether they are going to be provided with the ability to give content to a regulation that, by its plain terms, reaches a broad swath of speech that's unrelated to any government interest. So the Supreme Court has directed us to give a great deal of deference to the prison officials. How does that play into this? The deference to prison officials is to determine what harms exist in a prison environment, and then to look at the close fit between the regulation and those harms. And I think in these cases, the government has really failed to demonstrate what extra bandwidth they are getting out of the broadest applications of this statute. It seems from the argument of counsel previously that the statute could easily be more tailored, could easily be narrower, without the Bureau of Prisons losing any ability to sanction what they view as really detrimental speech inside the prison walls. The reason I say that is we have pointed to our briefs in what are various examples of speech that's clearly prohibited. For example, an inmate who writes to his wife and says, if the food doesn't get any better in here, I'm going to start twisting some arms. That's a threat of bodily harm. You can easily see how that is within the core of First Amendment, letting off steam, airing grievances. It's not even particularly hostile or abusive. And much, much more obviously hostile and abusive expressions would also be protected under the First Amendment. Well, I think the Bureau of Prisons would probably state that the reasonableness and the due process inherent in their internal process would assure that such speech would not be the subject of discipline. The same with a threat to harm Osama bin Laden, the same with a threat to murder the tooth fairy in no matter what graphic terms. However, that does amount to a broad, and I've said unbridled several times, but that is, I think, the correct word, grant of discretion to the Bureau of Prisons to act reasonably. And there simply is no support for that in First Amendment jurisprudence. If that addressed the Court's question, I'll move on. We do know that there are available alternatives that are well within doctrinal bounds. The clearly capable of prohibition were escape plans, plans of ongoing criminal activity, threats of blackmail or extortion. Do you want to address the footnote 15 where they appear to approve of a limitation saying the letter contains threats of physical harm against any person or threats of criminal activity? The regulation that was struck in Percunior itself did include a prohibition on outgoing correspondence that related to criminal activity, and that was among the language that the Court found overbroad in striking that regulation. And I would concur, so I think that's an important point, and second, I would concur in my somewhat co-counsel's explanation of the point that there is no reason reading the full context of that opinion to derive a meaning that something other than criminal threats would have been intended to be within the prohibition. The language, I think the government points out that the language of that apparently approved regulation is very close to Code 203. Certainly Your Honor, but I think if the Percunior Court had been looking at Section 203, I think the outcome would be much the same as what we're advocating for, which is a narrowing of the obviously overbroad and unconstitutional applications. I mean, in that case, the Bureau of Prisons essentially said there is no—it is both against our security concerns and against our interest in rehabilitating inmates to allow them to use vulgar, disgusting language to be disrespectful, to target their disrespect at prison guards. And as a matter of speaking outside of First Amendment jurisprudence, as a matter of common sense, that would seem to make some sense. And in your view, does Code 203 capture that sort of language? I would say it captures a similarly overbroad and unconstitutional swath of activity. At the threat of bodily harm, or is it the other offense that is the source of concern? I think it's both, Your Honor. I think the threat of any other offense, certainly, because it involves a threat to any person, fictional, real, dead, or alive, of any offense. It's difficult to imagine anything broader. And second, as to the threat of bodily harm in particular, it does encompass the joke that I mentioned. It encompasses an inmate who is expressing perhaps real fear and a thought that he will act in self-defense in the future. There are certainly applications that the government is unlikely to stand up here and defend. I think what the government will do is say this Court should look at what Mr. Lane did. And I would really urge the Court instead to look at the full application of the statute. I think that's what First Amendment jurisprudence clearly requires. And before I'll sit down, I'll just quickly read a quote from—this is long-standing black-letter law, Parker v. Levy, from the Supreme Court in 1974. In the First Amendment context, attacks have been permitted on overly broad statutes with no requirement that the person making the attack demonstrate that his own conduct could not be regulated by a statute drawn with the requisite narrow specificity. That's exactly what Mr. Lane is asking for here. Whether his conduct, his speech, could be sanctioned under a more tailored regulation is, frankly, an apposite to the question before the Court. Good morning. May it please the Court. My name is Sarah Quist and I represent the Warden Respondents. In these three cases before you today, the inmate threatened bodily harm to a warden, to prison officers, and to an attorney. In all of the cases, the inmate was disciplined for threatening bodily harm. I'd like to first address why the Court need not consider any other offense language or any other hypotheticals that are brought up today for three reasons. In Thornburg, the Court specifically remanded that case to look at the application of the incoming publications, and the Court did not look to other hypothetical situations that could have applied. And similarly here, I'd urge the Court to look at the specific language that was used in these cases and not potential other hypotheticals. The opposing counsel references First Amendment law generally outside of the prison context to say we can look at a facial attack even if the language would apply to the appellant. Do you disagree with that? I do disagree with that. The Court in the Barampour case said that the vagueness and overbreath arguments are subsumed in the Turner analysis, and similarly that would be subsumed here in the Procunier analysis. Also, the petitioner looks to many criminal statutes, and the Court is very clear that prison discipline is not comparable to criminal cases. The full panoply of rights does not apply in the prison discipline context, and there's little or no application in civil litigation dealing with prisoner internal operations, and that's from the Kutnick case. There's two other reasons why the Court need not look at hypothetical situations in this case, and that's from the Parker v. Levy case, which is much more similar to our case than in the criminal context. That's from a military court martial discipline case, and in that case the Court said one to whose conduct the statute clearly applies may not successfully challenge it, and that was challenged under the First Amendment. And the Court did not look to hypothetical acts in that case as urged by the plaintiff. Lastly, as I have stated, an overbreath analysis from criminal statutes simply is not applicable here in the prison discipline context, and courts have said that some open-ended quality is essential if the prison is to have any regulations, and that's also from the Kutnick case. And so in this situation there has to be some open-ended nature. And I'd like to talk a little bit more about how Code 203 is defined by the prison. In the case 55579, the discipline hearing officer wrote the elements of Code 203 in their decision, and the element is a communication of intent to inflict physical or other harm on any person or property. So we can see right there what 203 covers when the discipline hearing officer is considering. Are there any guidance documents or interpretations that have been issued by the Bureau of Prisons? There are elements documents that the discipline hearing officers have, and that document outlines the elements as written in that discipline hearing report as a communication of intent to inflict physical or other harm on any person or property. So that's the guidance provided to the discipline hearing officer. Is that in the record? That is in the record. It's on exertive record 82 in case 55579. Furthermore, the inmate is not just provided with the language of the Code 203. When an inmate is charged with a prohibited act, they receive an incident report that includes a box 9 that lists the number 203 with the language intent to or threatening another with bodily harm, but then also there's a description provided to the inmate. So the inmate could have been charged with some other codes for similar acts, and so the inmate can look to the description of what he did if he's questioning whether or not he was being charged with threatening another or with another offense. And lastly, just to give some context to that or other offense language to the extent that it would apply, although we don't believe it, it wasn't applied under the record here. In Martin v. Kelly, the court applied definitions from other prison program statements to define clear and present danger. And similarly here, if we want to look at the definition of offense, we can look to the prison discipline program statement, which is a public document but not part of the record. And there the term offense is used to both refer to criminal offenses and also prohibited act offenses. So those are the two ways that the offense is used. And just to put a little bit of context here, inmate discipline is categorized in four different levels. The 100 series is the greatest severity, 200 is high, 300 is moderate, and 400 is low. And so if an inmate were charged with some of these hypotheticals that are being raised, it would have to be within the 200 high series to fit code 203. Or within the BOP's policy itself, some hypothetical that is a low-level threat wouldn't satisfy the 203 code. I'd like to point out that in various contexts, as my colleague has stated, the First Amendment has been limited, and that's with harmful objects and outgoing mail in the Witheroo case. Threats of physical harm, as pointed out in Procuniae footnote 15, and also in Procuniae 14, where the court looks to a Bureau of Prisons program statement regarding outgoing mail. Threats of criminal activity was specifically reserved in Bradley. And in this case, we have threats to kill a prison guard, which could be raised to the criminal level. And also, endorsing prison gangs and outgoing mail has satisfied the Procuniae test in Kootenai. And for similar reasons, this, and as my colleague stated, this is the type of threat that the Supreme Court specifically contemplated. If the court has no questions, no further questions? Apparently not. I will submit on the briefs, and I urge the court to affirm the district court decision. Thank you. A few brief points in rebuttal, Your Honor. First, I think probably what will be the most important thing that this court will do in deciding these cases is to determine whether Procuniae is a facial over-breath First Amendment challenge, or whether instead courts can only look not to the regulation and to what it punishes, but to the particular conduct of the individual and whether it fits in that regulation. I submit that Procuniae itself does not support that position. Instead of looking at what each individual inmate had written in that case, the court looked at the full breadth of that regulation and explained why it did not come within constitutional bounds. And secondly, counsel pointed to a case that had been undermined, if not entirely obliterated in a certain sense. Johnson and DeMaia explained in no uncertain terms that an as-applied challenge was neither the only nor the appropriate framework, and in fact criticized, and we briefed this in our reply. I see Your Honor making a confused face. I cannot, well, it's briefed somewhat extensively in the reply, but the basic statement there was to rebut Justice Thomas in dissent saying that a statute cannot be vague, void for vagueness, if it's clear in any of its applications. He was looking at void for vagueness. Did it give adequate direction that somebody could be punished for an offense? And Justice Scalia overruled or limited Salerno and said it doesn't have to be void in every, it doesn't have to be vague in every single application, but its relationship here is not entirely clear. Well, Your Honor, I think the reason it applies is that Justice Scalia was explaining that even if one's own conduct would clearly be prohibited under that regulation, it can still be void for vagueness, and that person can still mount a facial vagueness challenge and need not make an applied challenge. And the only line of cases that opposing counsel has pointed to in stating that this court can limit its review to only one portion of the regulation at issue is that very line of cases, and the Supreme Court was clear in both Johnson and DeMaia to say some of our language in the past may have led other courts astray, but in fact, someone to whom the regulation obviously applies can mount a facial vagueness challenge. And as counsel stated, the test is pro cunea, and other tests are subsumed within that. But it is a facial attack, and therefore it's not appropriate, we submit, for this court to look only to the specific actions and specific statements that Mr. Lane made in this series of cases in determining the constitutionality. Thank you. Thank you. We have your argument in the case of the three consolidated appeals of Lane v. Tewes and Lane v. McGrew are now submitted.
judges: Fernandez, Ikuta, Sessions